UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                         :

TRB ACQUISITIONS LLC and E.D.Y. EQUITIES LLC,    :
                                         :

                   Plaintiffs,          :

                                        :       20-CV-0552 (JMF)

         -v-                       :

                                        :     MEMORANDUM OPINION
JACK YEDID,                        :       AND ORDER

                                        :

                   Defendant.         :

                                        :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        This case pits brothers Jack Yedid ("Jack") and Eli Yedid ("Eli") against one another and

is one piece of a larger and more complex family business dispute, the details of which are

mostly irrelevant here.  In 2011, Jack and Eli co-founded TRB Acquisitions LLC ("TRB"), a

company that acquires and licenses trademarks in the active wear and athleisure markets.  ECF

No. 18 ("Am. Compl.") ¶¶ 2, 31-32.[1]  Five years later, in 2016, Eli acquired Jack's ownership

interest in TRB through E.D.Y. Equities LLC ("E.D.Y."), which is wholly owned by Eli.  *Id.*

¶¶ 2, 50.  Then, in 2018, Jack was ousted from his position in another family business, Cutie Pie

Baby, Inc. ("CPB").  *Id.* ¶¶ 5, 55-57.  The following year, he initiated an arbitration proceeding

against Eli and his father, in which Jack sought to dissolve CPB; he demanded eight million

dollars from Eli to settle.  *Id.* ¶¶ 6, 61, 68.

        Meanwhile, adidas/Reebok had sued TRB, alleging that TRB's "RBX" trademark

infringed adidas/Reebok's "RBK" and "Reebok" trademarks.  *Id.* ¶ 3.  Jack threatened that if Eli

---

[1]      The relevant facts are drawn from the Amended Complaint and accepted as true for
purposes of this motion.  *See, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).

did not accede to his settlement demand in the CPB arbitration, he would provide damaging testimony against TRB in the adidas/Reebok litigation. *Id.* ¶¶ 59, 67-68. Eli refused Jack's settlement demand, and Jack's arbitration counsel informed adidas/Reebok that Jack was willing to testify against TRB, ultimately accepting a trial subpoena on Jack's behalf. *Id.* ¶¶ 69, 84, 87. Thereafter, adidas/Reebok listed Jack as one of its trial witnesses and filed a pretrial witness statement noting that Jack would testify: (1) "concerning TRB and CPB's bad faith intent to create a brand that would be confused with Reebok and would be positioned as a 'knockoff' Reebok brand"; (2) "concerning the fact that TRB and Eli Yedid did not intend to continue the brand identity (or product lines or channels of trade) of The Rugged Bear Company," from which TRB had acquired the "RBX" trademark; and (3) concerning TRB's plans to "greatly expand the use of [the 'RBX'] mark in new channels and in new markets across the United States." *Id.* ¶¶ 89-90; *see also id.* ¶ 34. TRB eventually settled the trademark infringement lawsuit. *Id.* ¶ 98.

The adidas/Reebok pretrial statement regarding the subjects of Jack's anticipated testimony forms the basis for this trade secret misappropriation action. Plaintiffs TRB and E.D.Y. deny that TRB ever intended to create a "'knockoff' Reebok brand" and infer from the witness statement that, in addition to disseminating false information about TRB's alleged trademark infringement scheme, Jack — either directly or through counsel — disclosed to adidas/Reebok true information about "TRB's core brand and marketing plan strategy, indicating that Jack Yedid misappropriated TRB's trade secret information." *Id.* ¶ 96. That is, they allege that Jack disclosed TRB's brand and marketing plans to a competitor in order to gain leverage in an unrelated arbitration. On that basis, TRB brings a claim under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b)(1). *See* Am. Compl. ¶¶ 99-113. Both Plaintiffs also

bring claims under state law.  *See id.* ¶¶ 114-33.  Jack now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint.  *See* ECF No. 19.

To state a claim for trade secret misappropriation under the DTSA, "a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret."  *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019) (internal quotation marks omitted).  Thus, to survive Jack's motion to dismiss their sole federal claim, Plaintiffs must "plead[] factual content that allows the [C]ourt to draw the reasonable inference" that they possessed a "trade secret."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The DTSA defines "trade secret[s]" to include "all forms and types of . . . business . . . information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).  Naturally, a DTSA plaintiff "has no obligation to reveal [its] secrets in the [c]omplaint simply to prove that they exist."  *Island Intellectual Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020) (second alteration in original) (internal quotation marks omitted).  "But that does not mean a party can get away with nebulous descriptions at the highest level of generality."  *Ad Lightning Inc. v. Clean.io, Inc.*, No. 19-CV-7367 (JPO), 2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7, 2020) (internal quotation marks omitted).  To the contrary, a complaint that "only claims general categories of information and data as trade secrets" does not state a claim under the DTSA because it "does not adequately put [the defendant] on sufficient notice of the contours of [the] claim for misappropriation."  *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-CV-9779 (LTS), 2020 WL 7774478, at *2 (S.D.N.Y.

Dec. 30, 2020); *accord Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("Alleging the existence of general *categories* of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence." (internal quotation marks and citation omitted)).[2]

Applying these standards here, the Court concludes that TRB fails to plausibly allege that it possessed a trade secret because the Amended Complaint describes nothing more than general categories of information and data. The Amended Complaint alleges that TRB's trade secret is its "core brand and marketing plan strategy," which "includ[es] plans to create and discontinue licensed product lines, and strategies and plans for competing in certain trade channels, product categories and markets, including which types of consumers to target, which retail and other channels to enter and at which price points, and ultimately which licensees to partner with." Am. Compl. ¶ 101. This description of TRB's trade secrets is far too general to state a DTSA claim. TRB does not, for example, offer any particulars of how its strategies and plans function or any other basis for the Court to discern exactly what information it alleges Jack misappropriated, let alone whether that information is protectable. Because TRB does not "nudge[]" its DTSA claim "across the line from conceivable to plausible," it must be, and is, dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]

---

[2]    To the extent that a plaintiff bringing a DTSA claim cannot meet this standard without revealing the trade secrets, the plaintiff could always seek leave to "file[] a description of the alleged trade secrets under seal." *Elsevier Inc.*, 2018 WL 557906, at *6. Plaintiffs in this case did not seek such leave.

[3]    Because the Amended Complaint does not plausibly allege the existence of a trade secret, the Court need not and does not address Jack's alternative argument that Plaintiffs fail to adequately allege misappropriation. *See* ECF No. 21 ("Def.'s Mem."), at 20-22.

In light of the dismissal of the only claim under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims.  Under 28 U.S.C. § 1367(a), a district court has discretion with respect to whether to exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).  Here, there is no basis to depart from that general rule.  The case is, as a legal matter, still at an early stage.  Thus, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).[4] Accordingly, Plaintiffs' state-law claims are dismissed without prejudice to refiling in state court.  *See* 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *United States ex rel. Borzilleri v. AbbVie, Inc.*, No. 15-CV-7881 (JMF), 2019 WL 3203000, at *3 (S.D.N.Y. July 16, 2019), *aff'd*, — Fed. App'x —, 2020 WL 7039048 (2d Cir. Dec. 1, 2020) (summary order).

---

[4]     Plaintiffs contend that exercising supplemental jurisdiction over their state-law claims would promote efficiency because New York state courts suspended the filing of new, non-essential cases in response to the COVID-19 public health crisis.  *See* ECF No. 27 ("Pls.' Opp'n"), at 25.  That argument is not particularly persuasive on its own terms.  It is also moot, as parties have been able to file new, non-essential cases in the state courts since May 2020.  *See* AO/114/20, https://www.nycourts.gov/whatsnew/pdf/AO-114-20.pdf; *see also* ECF No. 29 ("Def.'s Reply"), at 10.

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiffs' Amended Complaint is dismissed with prejudice as to TRB's DTSA claim and without prejudice to re-filing in state court as to their state-law claims. Moreover, the Court declines to grant Plaintiffs leave to amend their Amended Complaint *sua sponte*. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted). Here, Plaintiffs do not request leave to amend or suggest that they are in possession of facts that would cure the problems with TRB's DTSA claim. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014). Additionally, the Court granted Plaintiffs leave to amend their original complaint in response to the Defendant's motion to dismiss and explicitly warned that they would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 17; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

The Clerk of Court is directed to terminate ECF No. 19 and to close the case.

SO ORDERED.

Dated: January 28, 2021
   New York, New York

JESSE M. FURMAN
United States District Judge